ORIGINAL ACTION JOURNAL ENTRY AND OPINION
{¶ 1} Relator Jennifer Martinez filed a declaration of candidacy and petition as a candidate in the democratic party's May 2, 2006 primary election for the office of judge of the juvenile court, full term commencing January 3, 2007. Henry J. Hilow filed a protest to Martinez' candidacy.
 {¶ 2} Respondent the Cuyahoga County Board of Elections ("Board") held a hearing on March 6, 2006, determined that the filing of the protest was timely and granted Martinez' request for a continuance of the Board's hearing on the merits of the protest. The Board reconvened on March 13, 2006 and upheld the protest on the ground that the name "Jennifer Martinez" on Martinez' declaration of candidacy was not her actual name of "Jennifer Atzberger."
 {¶ 3} On March 13, 2006, Martinez filed this action in mandamus and filed an amended complaint on March 14, 2006. Martinez requests that this court issue a writ of mandamus compelling the Board to place her name on the May 2, 2006 democratic primary ballot. This court ordered Martinez to file transcripts of the Board's hearings by March 20, 2006 and granted respondent's motion for extension of time to respond to the complaint. On March 23, 2006, respondent filed an answer to the complaint as well as a brief in opposition to relator's brief in support for writ of mandamus and motion for summary judgment. On March 24, 2006, relator filed a supplemental motion in support of petition for writ of mandamus, which we will treat as relator's motion for summary judgment.
 {¶ 4} The fundamental criteria for issuing a writ of mandamus are well-established:
"In order to be entitled to a writ of mandamus, relator must show (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State, ex rel. National CityBank v. Bd. of Education (1977), 52 Ohio St. 2d 81,369 N.E.2d 1200."
State ex rel. Harris v. Rhodes (1978), 54 Ohio St. 2d 41, 42,374 N.E.2d 641. Of course, all three of these requirements must be met in order for mandamus to lie.
"It must also be noted that a decision of a board of elections must be scrutinized "by this court only to ascertain whether it is tainted with fraud or corruption or resulted from an abuse of discretion or a clear disregard of the applicable law." State exrel. Morrison v. Bd. of Elections (1980), 63 Ohio St.2d 336,339, 410 N.E.2d 764, citing Sullivan v. State (1932),125 Ohio St. 387, 181 N.E. 805."
McLaughlin v. Cuyahoga Cty. Bd. of Elections,156 Ohio App.3d 98, 2004-Ohio-492, at ¶ 4, 804 N.E.2d 1004.
 {¶ 5} Initially, Martinez challenges the Board's determination that the protest was filed timely. R.C. 3513.05
provides, in part: "The protest shall be in writing, and shallbe filed not later than four p.m. of the sixty-fourth day before the day of the primary election * * *." (Emphasis added.) It is undisputed that the protest was time and date-stamped at 4:33 p.m. on February 27, 2006, the sixty-fourth day before the day of the primary election. The transcript of the March 6 hearing before the Board reflects the following colloquy between the Board chair and a Board employee, Shantiel Hawkins, after Ms. Hawkins was sworn in as a witness.
MS. HAWKINS: I received a phone call from Paul Oles down at the front desk at approximately 3:45 on Monday [February 27] afternoon stating that there was mail to be picked up from the front desk. I did not go down until the end of the day at 4:30 to pick it up. I was unaware it was a protest.
MR. CHAIRMAN: But that is — Let me ask you this, Shantiel, did you, in fact pick it up and that was the protest
MS. HAWKINS: Yes, I did.
THE CHAIRMAN: — of Mr. Hilow?
MS. HAWKINS: I opened it up, and I noticed it was a protest, an I time stamped it in, and I walked it up at 4:33, and I immediately put a note on it saying Paul called at 3:45, he said you had mail, but I couldn't leave the desk at that time. We did not go down and pick up the mail at that point. I was unaware of it.
THE CHAIRMAN: Was that the only piece of mail that you picked up?
MS. HAWKINS: Yes.
THE CHAIRMAN: That day?
MS. HAWKINS: Yes, it was.
 {¶ 6} In State ex rel. Harbarger v. Cuyahoga Cty. Bd. ofElections, 75 Ohio St.3d 44, 1996-Ohio-254, 661 N.E.2d 699, the protestor filed the protest on February 8 when the deadline was January 30. Prior to the Board's hearing, candidates whose candidacies were the subject of the protest filed an action in prohibition against the Board to prevent the Board from holding a hearing on the protest. Because the protest filing was late, the Supreme Court held that the Board lacked the authority to hear the protest and issued a writ of prohibition to prevent the Board from holding a hearing on the protest.
 {¶ 7} Clearly, the Board lacks the authority to uphold an untimely protest. As a result, we must first consider whether the protest of Martinez' candidacy was filed timely.
 {¶ 8} Regrettably, first the Board and now this court must confront the issue of "what constitutes filing?" The record reflects that the protestor submitted the protest by mail which was received on the last day for filing a protest. Experienced counsel would have to be aware that delivery by mail so close to a deadline could prevent any consideration of the merits. Additionally, the testimony before the Board does not reflect well on the Board's procedures. Although we acknowledge that, ultimately, a party seeking relief has the duty to present a request for relief in a timely manner, Board staff could easily have processed this correspondence prior to the deadline for filing. Prompt action would have eliminated any need for the Board and this court to address the issue of "what constitutes filing?"
 {¶ 9} Unfortunately, neither the parties nor this court has been able to identify any controlling authority which answers this question in the context of a filing at a board of elections. Compare Sup.R. 26.02(B)(2) (" Upon the filing of any paper or electronic entry permitted by the court of appeals, a stamp or entry shall be placed on the paper of electronic entry to indicate the day, month, and year of filing."). In the context of considering what constitutes "filing" for purposes of considering an appeal from a conviction for making false allegations of a peace officer's misconduct in violation of R.C. 2921.15, the Ninth District Court of Appeals observed: "Webster's Revised Unabridged Dictionary (1913) 559, defines `file' as: `To bring before a court or legislative body by presenting proper papers in a regular way[.]'" Akron v. Davenport, Summit App. No. 21552,2004-Ohio-435, at ¶ 17.
 {¶ 10} Certainly, imprinting a formal date stamp is the "regular way" of filing for courts and most administrative bodies. Yet, as respondent observes, some authority suggests that circumstances can supersede the date stamp.
"[T]he Ohio Revised Code requires the clerk to endorse the date of filing on each document filed in a case, and the file-stamped date is presumed to reflect the actual date of filing. Ins. Co.of N. Am. [v. Reese Refrig. (1993)], 89 Ohio App. 3d at 790-791,627 N.E.2d 637. However, that presumption can be refuted by evidence showing that the clerk received the document on a different date. Kloos v. Ohio Dept. of Rehab. Corr.,
1988 Ohio App. LEXIS 1744 (May 3, 1988), Franklin App. No. 87AP-1215, unreported."
Rhoades v. Harris (1999), 135 Ohio App.3d 555, 557,735 N.E.2d 6 [First Dist.]. Compare Capital Mgt. Ltd. v. Cleveland,
Cuyahoga App. No. 81980, 2003-Ohio-4055, and Berea Music v. Cityof Berea, Cuyahoga App. No. 80897, 2002 Ohio 6639 ("filed" means "actual delivery" of notice of appeal to administrative agency under R.C. 2505.04).
 {¶ 11} In this original action in mandamus, Martinez has the burden of demonstrating that she has a clear legal right to relief and that respondent has a clear legal duty to provide that relief. (Respondent has correctly admitted that Martinez does not have an adequate remedy in the ordinary course of the law.) In order to be entitled to relief, she must demonstrate that the Board's decision was "tainted with fraud or corruption or resulted from an abuse of discretion or a clear disregard of the applicable law." McLaughlin, supra. We cannot conclude that the Board clearly disregarded applicable law because Martinez has not demonstrated any controlling legal authority which required the Board to conclude that the filing of the protest was untimely. Additionally, we specifically reject Martinez' argument that the Board — by considering testimony from one of its employees — tainted the process with fraud or corruption and abused its discretion. The witness, Shantiel Hawkins, was sworn and testified factually. Furthermore, the record does not reflect any effort to cross-examine this witness.
 {¶ 12} As a consequence, we must reluctantly conclude that Martinez may not maintain her claim that she is entitled to relief in mandamus because the protest was filed untimely. We do not, however, intend to suggest that we approve of either the protestor's use of the mail to tender the protest on the last day protests could be filed or the Board staff's failure to affix a date-and-time stamp on the protest prior to 4:00 p.m. on February 27, 2006. Our holding with regard to the timeliness of the protest is limited to the peculiar and lamentable facts presented in this case.
 {¶ 13} Martinez also asserts that the Board incorrectly concluded that she improperly completed her Declaration of Candidacy by using the name "Jennifer Martinez." Specifically, the protest asserts that her name should have included "Atzberger," which is her married name. The evidence of her use of her name includes:
1. A deed and mortgage Jennifer Atzberger
2. Attorney registration Jennifer Nicole Atzberger
3. Attorney registration Jennifer Nicole Martinez Atzberger
4. County payroll Jennifer M. Atzberger
5. Bd. of Elections Change of Name from Jennifer M. (1/31/06) Atzberger to Jennifer Martinez
6. Birth Certificate Jennifer Nicole Martinez
7. Social Security Card Jennifer N. Martinez
8. Cleveland State University I.D. card Jennifer N. Martinez
9. Cleveland State University transcript Jennifer Nicole Martinez
10. Marriage License Jennifer N. Martinez
11. Supreme Court of Ohio Attorney I.D. Jennifer Nicole Martinez Atzberger
12. Vehicle Registration Jennifer N. Martinez
13. Court Filing Jennifer Martinez Atzberger
14. Credit Card and statement Jennifer Martinez
15. U.S. Passport Jennifer Nicole Martinez
16. Correspondence Jennifer N. Martinez
17. Driver's license Jennifer M. Atzberger
18. Business Card Jennifer Martinez Atzberger
19. Part petitions for the 1/3/2007 term Jennifer Martinez
 {¶ 14} As was the case in McLaughlin, supra, "[t]he issue before this court is whether the Board abused its discretion in finding that [relator] improperly completed the Declaration of Candidacy by employing only her maiden name." Similarly, R.C.3513.06 is controlling in this case as it was in McLaughlin.
"If any person desiring to become a candidate for public office has had a change of name within five years immediately preceding the filing of the person's declaration of candidacy, the person's declaration of candidacy and petition shall contain, immediately following the person's present name, the person's former name. * * * This section does not apply to a change of name by reason of marriage * * *."
 {¶ 15} We also note as the McLaughlin court did that the marriage exemption does not apply in this case. Rather, had Martinez completed her Declaration of Candidacy using her married name she would not have been required to use her maiden name.
 {¶ 16} What is dispositive in this action, however, is that Martinez circulated the part petitions using the name "Jennifer Martinez" on various dates from January 9, 2006 through at least January 28, 2006. Martinez did not, however, submit her change of name form to the Board until January 31, 2006. That is, in the Declaration of Candidacy she declares that she, "Jennifer Martinez," is a qualified elector. Yet, at that very time, her name as an elector was "Jennifer M. Atzberger."
 {¶ 17} Although Martinez argues that she was given inaccurate information by Board staff regarding the timing and significance of her submitting the change of name form, any mistaken advice by the board of elections or its staff does not estop the Board from applying the law. "To hold otherwise would permit the advice of representatives of the Board or the Board itself to take precedence over the enacted law of the General Assembly." Stateex rel. Donegan v. Cuyahoga Cty. Bd. of Elections (2000),136 Ohio App.3d 589, 595, 737 N.E.2d 545. See also State ex rel.Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections
(1997), 80 Ohio St. 3d 302, 307, 1997-Ohio-315, 686 N.E.2d 238.
 {¶ 18} During the March 13 hearing, Martinez stated to the Board: "I've gone by Jennifer Martinez my whole life." The evidence presented to the Board and through the parties' motions to this court suggests a much less clear use of her name. Once again, it is Martinez' burden to demonstrate that she has aclear legal right to relief and that the Board has a clear
legal duty to permit her name to remain on the May 2, 2006 ballot. The record in this case, however, is — at most — less than clear that Martinez has solely used her maiden name of "Jennifer Martinez." Rather, as was the case in McLaughlin,
supra, the evidence is very clear "that she has abandoned sole use of her maiden name upon marriage * * *." Id. at ¶ 7.
 {¶ 19} Accordingly, we grant respondent's motion for summary judgment and deny relator's converted motion for summary judgment. Relator to pay costs. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B).
Writ denied.
Kilbane, J., concurs.
 Blackmon, J., concurs.