SMITH ET AL., APPELLEES, *v.* SCIOTO COUNTY BOARD OF ELECTIONS;

ESSMAN, APPELLANT.

**[Cite as *Smith v. Scioto Cty. Bd. of Elections*,**

**123 Ohio St.3d 467, 2009-Ohio-5866.]**

*Elections — Appeal from judgment granting a contest and setting aside the result*
*of a special election on a proposed amendment to a city charter — Contest*
*barred by laches.*

(No. 2009-0900 — Submitted October 20, 2009 — Decided November 12, 2009.)

APPEAL from the Court of Common Pleas of Scioto County, No. 09CIH00067.

————————————

**Per Curiam.**

**{¶ 1}** This is an appeal from a judgment granting a contest and setting aside the result of a February 3, 2009 special election on a proposed amendment to the charter of the city of Portsmouth, Ohio. Because the challenge to the proposed amendment raised in the election contest was not instituted with the requisite diligence and should have been raised before the election, laches barred the contest. Therefore, we reverse the judgment of the common pleas court.

**Facts**

*Petition to Amend City Charter*

**{¶ 2}** In August 2008, appellant, Larry C. Essman, and the rest of a committee of petitioners filed a petition requesting the submission to a vote of the electors of the city of Portsmouth, Ohio, the following proposed amendment to Section 47 of the Portsmouth Charter:

**{¶ 3}** "Section 47(f): Limitations of Taxing Authority

**{¶ 4}** "No taxes may be levied on the property owners of the City of Portsmouth for the retirement of any bonded indebtedness without the approval of

such levy by a majority of the electors of the City of Portsmouth. Bonded indebtedness for the construction, acquisition and/or improvement of City property costing more than $100,000 in total may be incurred only by approval of a majority of the electors of the city at the next general election or a special election called by the Council. Expenditures for the construction, acquisition, and/or improvement of City property in excess of $100,000 in a fiscal year, not funded by bonded indebtedness, must be paid from Capital Improvements Funds, as approved in Section 47(c) and Section 47(d); an appropriate enterprise fund, or from designated grant funds. *This amendment shall become effective immediately upon passage by a majority of the electors of the City of Portsmouth, Ohio*." (Emphasis added.)

### Ballot Language

{¶ 5} On the election ballot for the proposed charter amendment, the foregoing language from the petition was repeated following a heading that specified: "Approval of a majority of the electors of the City of Portsmouth needed for Passage." The ballot form was sent by the Scioto County Board of Elections to the secretary of state for approval. According to the director of the board of elections, the ballot accurately reflected the proposed charter amendment.

### Election Result

{¶ 6} On February 18, 2009, the board of elections certified that 1,159 electors voted on the issue of whether to adopt the proposed charter amendment at the February 3 special election and that of those votes, 584 voted yes and 575 voted no. The director of the board of elections believed that there may have been 6,000 electors in Portsmouth at the time of the election. The board did not determine the legal effect of the number of affirmative votes cast on the issue; instead, the board merely counted the votes and certified the totals.

### Election Contest

**{¶ 7}** In March 2009, appellees, Patricia Smith and Michael W. Evans, filed in the Scioto County Court of Common Pleas a complaint to contest the special election pursuant to R.C. 3515.09. Although purporting to be an election contest, appellees' complaint requested that the court "declare that the proposed Portsmouth City Charter amendment did not receive the required number of votes necessary for passage based upon the ballot language at issue or for such other relief either in equity or at law." The board of elections filed an answer and a motion to dismiss in which it claimed that it did not make any declaration concerning the impact of the voting results. Essman submitted an answer.

**{¶ 8}** The common pleas court conducted a hearing on the election contest on March 24, and the parties submitted briefs. Essman also filed two motions to dismiss the contest.

**{¶ 9}** The common pleas court treated the matter as an election contest and determined that the ballot had misled electors and that the proposed amendment had failed.

**{¶ 10}** The cause is now before this court upon Essman's appeal as of right from the common pleas court's judgment.

**Legal Analysis**

**{¶ 11}** "We have consistently required relators in election cases to act with the utmost diligence." *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 19. Laches may bar an action for relief in an election-related matter if the persons seeking this relief fail to act with the requisite diligence. See generally *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 24.

**{¶ 12}** Appellees claimed an election irregularity resulting from the use of ballot and petition language that was "violative" of statutory requirements and "inaccurate and misleading." The challenged language, however, was contained in the proposed charter amendment incorporated in the petition filed in August

2008. Appellees could have raised their claims in a timely pre-election protest to the petition. R.C. 3501.39(A). "Election contests may not be used as a vehicle for asserting an untimely protest." *Portis v. Summit Cty. Bd. of Elections* (1993), 67 Ohio St.3d 590, 592, 621 N.E.2d 1202.

{¶ 13} Moreover, appellees were aware of or should have been aware of the ballot language long before the February 3 special election, but they failed to raise the issue until after the election was completed. See *Maschari v. Tone*, 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 33-36, citing *In re Contested Election of Nov. 2, 1993* (1995), 72 Ohio St.3d 411, 413-414, 650 N.E.2d 859.

{¶ 14} Although Essman did not raise this issue in his answer, he did raise it in his trial brief. More importantly, "[f]or election cases, laches is not an affirmative defense, and [persons seeking relief] have the burden of proving that they acted with the requisite diligence." *State ex rel. Vickers v. Summit Cty. Council*, 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, ¶ 13.

{¶ 15} Appellees' reliance on our decision in *Beck v. Cincinnati* (1955), 162 Ohio St. 473, 55 O.O. 373, 124 N.E.2d 120, is misplaced. In *Beck*, we did not consider laches. Instead, we held that contestors who had challenged ballot language after the election were not estopped from raising their claim, even though they could have raised it before the election, because the irregularity involved was " 'of such substantial nature as to void the results of the election.' " Id. at 476, quoting the trial court opinion.

{¶ 16} The misleading language inserted in the ballot language for a tax levy in *Beck* provided, "If levy passes, there will be no city income tax in 1955 or 1956." Id. at 474. We concluded that this additional language violated R.C. 3505.06 and exceeded the authority of city council. Id. at 474-475. We further reasoned that the contestors were not estopped from raising their claim, because "[i]t is a matter of common knowledge that the majority of electors are not property holders and therefore undoubtedly were persuaded by the unauthorized

phrase at issue." Id. at 476. The alleged irregularity in this case is not so substantial that relators should be permitted to sleep on their rights until after an adverse election result.

{¶ 17} Therefore, laches barred appellees' election contest, and the common pleas court erred in granting the contest and setting aside the special-election result.

### Conclusion

{¶ 18} Based on the foregoing, we reverse the judgment of the common pleas court granting the election contest. Insofar as appellees challenged the election result because of the petition and ballot language, they should have raised their claims in a pre-election protest or proceeding rather than in a postelection contest. By so holding, we need not address other matters raised by the parties. See, e.g., *Rzepka v. Solon*, 121 Ohio St.3d 380, 2009-Ohio-1353, 904 N.E.2d 870, ¶ 34.

{¶ 19} Insofar as appellees requested the determination of the special-election result in accordance with their interpretation — that the proposed charter amendment did not pass, because it did not receive the majority vote of all city electors rather than simply a majority of those electors that voted in the special election — that request is outside the scope of an election contest, which challenges an election result rather than seeking its determination. Unlike the board of elections in *Rzepka*, at ¶ 23, which expressly certified that although a majority of city electors voted in favor of a proposed rezoning ordinance, the ordinance had been rejected because it had not passed in the ward in which the rezoning was to occur in accordance with the ordinance's ward-majority requirement, the board of elections here did not certify whether the proposed charter amendment had passed or failed. Appellees' remedy is thus a declaratory-judgment action instead of an election contest. We note that there is no appeal as

5

of right directly to this court from a common pleas court judgment in a declaratory-judgment action. We deny appellees' request for oral argument.

Judgment reversed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Larry C. Essman, pro se.

Rodeheffer & Miller, Ltd., and Stephen C. Rodeheffer; and George L. Davis III Co., L.L.C., George L. Davis III, and George L. Davis IV, for appellees.

_____