WEBB et al.,

v.

## LUCAS COUNTY BOARD OF ELECTIONS et al.

[Cite as *Webb v. Lucas Cty. Bd. of Elections*, 195 Ohio App.3d 396, 2011-Ohio-4576.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–11–1209.

Decided Sept. 12, 2011.

Keith Wilkowski and Jill K. Bigler, for relators.

Julia R. Bates, Lucas County Prosecuting Attorney, and John A. Borell and Karlene D. Henderson, Assistant Prosecuting Attorneys, for respondents.

Per Curiam.

{¶ 1} This is an action in prohibition brought by relators, Lindsay Webb, candidate for city of Toledo Council, District Six, and five electors who have voted for Webb in the September 13, 2011 primary election, to prohibit respondents, the Lucas County Board of Elections and the four members of the board in their official capacity, from conducting a protest hearing on the protest filed by Douglas J. DeCamp, which seeks to remove Webb from the ballot for the primary election. For the reasons that follow, we grant a writ prohibiting the board from conducting a hearing on the DeCamp protest insofar as it would rule on the validity of Webb's name being placed on the primary-election ballot.

{¶ 2} In order to obtain a writ of prohibition, relators must establish that (1) respondents are about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying a writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 234–235, 638 N.E.2d 541,

citing *State ex rel. Koren v. Grogan* (1994), 68 Ohio St.3d 590, 629 N.E.2d 446. Because a protest hearing in election matters is a quasi-judicial proceeding, relators have established the first requirement for extraordinary relief in prohibition. See *State ex rel. Harbarger v. Cuyahoga Cty. Bd. of Elections* (1996), 75 Ohio St.3d 44, 45, 661 N.E.2d 699.

{¶ 3} Relators must also establish that denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. Relators assert that an adverse ruling from the board would require that Webb be removed from the ballot and the votes of the electors-relators "would not be counted, and they would be denied the opportunity to be represented by the person of their choosing." We agree. Any further action in the ordinary course of the law would not provide "complete, beneficial, and speedy relief to remedy the board's unauthorized action." *Harbarger* at 47. This matter was decisional on September 7, 2011, merely six days from the September 13, 2011 primary election. Neither an injunction nor a direct appeal could be finalized until after the election. *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 292, 649 N.E.2d 1205. See also *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections,* 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 19. (Proper to file prohibition action two months prior to time when absentee ballots were required to be printed and available for use.) Consequently, we find that relators have established this requirement for extraordinary relief in prohibition.

{¶ 4} Finally, relators assert that the board's attempt to conduct a protest hearing, initiated by DeCamp, is unauthorized pursuant to R.C. 3501.39, which provides:

{¶ 5} "(A) The secretary of state or a board of elections shall accept any petition described in section 3501.38 of the Revised Code unless one of the following occurs:

{¶ 6} "(1) A written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition is invalid, in accordance with any section of the Revised Code providing a protest procedure.

{¶ 7} "(2) A written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition violates any requirement established by law.

{¶ 8} "(3) The candidate's candidacy or the petition violates the requirements of this chapter, Chapter 3513. of the Revised Code, or any other requirements established by law.

{¶ 9} "(B) Except as otherwise provided in division (C) of this section or section 3513.052 of the Revised Code, a board of elections shall not invalidate any declaration of candidacy or nominating petition under division (A)(3) of this section after the sixtieth day prior to the election at which the candidate seeks nomination to office, if the candidate filed a declaration of candidacy, or election to office, if the candidate filed a nominating petition.

{¶ 10} "(C)(1) If a petition is filed for the nomination or election of a candidate in a charter municipal corporation with a filing deadline that occurs after the ninetieth day before the day of the election, *a board of elections may invalidate the petition within fifteen days after the date of that filing deadline.*

{¶ 11} "(2) If a petition for the nomination or election of a candidate is invalidated under division (C)(1) of this section, that person's name shall not appear on the ballots for any office for which the person's petition has been invalidated. If the ballots have already been prepared, the board of elections shall remove the name of that person from the ballots to the extent practicable in the time remaining before the election. If the name is not removed from the ballots before the day of the election, the votes for that person are void and shall not be counted." (Emphasis added.)

{¶ 12} The DeCamp protest claims that Webb failed to timely file her written "acceptance of nomination" for the municipal office she seeks. In support of this argument, respondents cite the Charter for the city of Toledo, Chapter III, Section 14, which provides:

{¶ 13} "Any eligible person placed in nomination as hereinabove provided shall have his or her name printed on the ballots for the primary election if, within five (5) days after such notification, he or she shall have filed with the elections authorities a written acceptance of nomination."

{¶ 14} In response, relators assert that Webb needed only to have "substantially complied" with the city of Toledo Charter. In support of this argument, they rely on *State ex rel. Troy v. Bd. of Elections of Lake Cty.* (1959), 170 Ohio St. 17, 9 O.O.2d 336, 161 N.E.2d 777, in which the Supreme Court held that "the *declaration of candidacy* required by [former R.C. 3513.261] to be executed by a candidate [in a municipal election] *constitutes an acceptance of the nomination.*" (Emphasis added.) However, the *Troy* court's holding was premised on the fact that "effective in 1954, the state statutes were changed and it [was] required under the provisions of Section 3513.261, Revised Code, that a written declaration of candidacy be signed by the candidate, and the prior sections requiring the written acceptance were repealed." Id. at 18. Further, the *Troy* decision was silent as to whether Troy, a mayoral candidate, actually had filed a declaration of

candidacy. Here, as evidenced by the stipulated facts, Webb did not file a declaration of candidacy, nor was she required to by the city charter.

{¶ 15} The city of Toledo Charter, Chapter III, Section 11, provides, "All elections provided for by this Charter, whether for the choice of officers or the submission of questions to the voters, shall be conducted by the election authorities prescribed by general laws and the provisions of the general laws of the State shall apply to all such elections except as provision is otherwise made by this Charter." Chapter III, Section 12 of the charter requires that "candidates for Mayor and for Council to be voted for at the regular City election under the provisions of this Charter shall be nominated at a non-partisan primary election to be held on the second Tuesday after the first Monday in September * * * in such odd-numbered years." Chapter III, Section 13, then requires that the name of the elector be placed on the ballot (for city council running in a district) if a petition, signed by not less than 50 nor more than 100 electors, is filed with the election authorities. Thereafter, Chapter III, Section 14 of the charter requires:

{¶ 16} "All separate papers comprising a *nominating petition* shall be assembled and filed with the election authorities as one instrument at least sixty (60) days prior to the date of holding the primary election with respect to which such petition is filed. Within ten (10) days after the filing of such *nominating petition* the election authorities shall notify the person therein as a candidate whether the petition is found to satisfy all the prescribed conditions. *Any eligible person placed in nomination as hereinabove provided shall have his or her name printed on the ballots for the primary election if, within five (5) days after such notification, he or she shall have filed with the elections authorities a written acceptance of nomination.*" (Emphasis added.)

{¶ 17} Therefore, we find that *Troy* contains an incomplete analysis on the facts presented, and therefore it is unpersuasive. Further, we need not ultimately determine the issue whether Webb substantially complied with the city of Toledo Charter. In order to determine whether prohibition is appropriate, we must address only whether the power of the board to hold a hearing to invalidate Webb's petition is unauthorized by law.

{¶ 18} Respondents argue that an error in the board's exercise of jurisdiction cannot be attacked collaterally, such as through relators' writ of prohibition. Respondents urge this court to deny the writ and permit the board to conduct a hearing to determine the validity of the DeCamp protest. We agree that the board has authority to conduct a hearing on the DeCamp protest, but can invalidate a petition as a result of the protest only if authorized to do so by law. Relators, for their part, claim that the July 15, 2011 deadline for the filing of Webb's nominating petitions triggered the start of a "statutory deadline" pursuant to R.C. 3513.05, 3501.39(A)(1), and 3501.39(C)(1) for the board to

consider the protest of Webb's petition. Relators urge that the period for protesting Webb's petition ended on July 30, 2011. Therefore, relators argue that the protest is untimely, leaving the board with no authority to invalidate Webb's petition. However, R.C. 3513.05 provides a protest procedure for declarations of candidacy. As we have stated, Webb did not file a declaration of candidacy. Thus, R.C. 3513.05 is inapplicable. Nevertheless, we still find that the board is unauthorized to invalidate Webb's petition due to the time constraints set forth in R.C. 3501.39(C)(1).

{¶ 19} In determining this, we must first consider whether the DeCamp protest is subject to R.C. 3501.39, which is titled "Grounds for rejection of petition or declaration of candidacy." R.C. 3501.39(A) requires a board of elections to accept any petition *described in section R.C. 3501.38* unless "[a] written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition" (1) is invalid, in accordance with any section of the Revised Code providing a protest procedure or (2) violates any requirement established by law. R.C. 3501.39(A)(1) and (2). A board may also sua sponte invalidate a petition or declaration of candidacy if it violates the requirements set forth in R.C. Chapters 3501 or 3513, or any other requirements established by law. R.C. 3501.39(A)(3).

{¶ 20} R.C. 3501.38 applies to "[a]ll declarations of candidacy, nominating petitions, or *other petitions presented to or filed with * * * a board of elections * * * for the purpose of becoming a candidate for any nomination or office or for the holding of an election on any issue.*" (Emphasis added.) We construe Webb's "acceptance of nomination" to fall within this definition because it was filed "for the purpose of becoming a candidate for any nomination or office." Thus the DeCamp protest of Webb's filing of her acceptance of nomination must be brought pursuant to R.C. 3501.39.

{¶ 21} We find further support for our position in *State ex rel. Scherach v. Lorain Cty. Bd. of Elections*, 123 Ohio St.3d 245, 2009-Ohio-5349, 915 N.E.2d 647. In *Scherach*, the Supreme Court, in determining whether the Lorain County Board of Elections had the authority to invalidate a petition regarding a candidate's failure to file an acceptance of nomination, stated, "R.C. 3501.39(A)(2) * * * applies solely to petitions described by R.C. 3501.38, which in turn refers to '[a]ll declarations of candidacy, nominating petitions, or other petitions presented to or filed with * * * a board of elections * * * for the purpose of becoming a candidate for any nomination or office.' By contrast, this case involves a person whose candidacy originated not by declaration of candidacy or nominating or other petition but by certification of a selection by an appropriate committee of a political party to fill the unexpired term of a person who had resigned." Id. at

¶ 20. In the case sub judice, Webb's candidacy originated by nominating petitions, and therefore, the protest regarding her acceptance of nomination, in accordance with *Scherach*, would be governed by R.C. 3501.39.

{¶ 22} Because the DeCamp protest is governed by R.C. 3501.39, we must next determine whether the board can invalidate Webb's petition pursuant to that statute. Relators argue that R.C. 3501.39(C)(1) limits the time the board can invalidate a petition in a municipal election *after a valid protest* to within 15 days from the date of the filing. We initially note that R.C. 3501.39(C)(1) is applicable, because the filing deadline for the acceptance of nomination, according to the city of Toledo Charter, was less than 60 days prior to the election. Relators assert that the DeCamp protest is therefore barred by R.C. 3501.39(A)(1) pursuant to the time limitation for protests as set forth in R.C. 3513.05. Relators heavily rely on the Supreme Court's analysis of former R.C. 3501.39 in *Harbarger*, 75 Ohio St.3d 44, 661 N.E.2d 699. The *Harbarger* court determined that an election protest of declarations of candidacy was barred by the time limitation set forth in former R.C. 3501.39, which must be read in conjunction with the limitations to the filing of protests contained in R.C. 3513.05. Therefore, the Cuyahoga County Board of Elections was without any authority to invalidate the declarations of candidacy and thus a hearing to invalidate the petitions was unlawful. As previously stated, relators' argument fails as Webb did not file a declaration of candidacy pursuant to R.C. 3513.05, nor was she required to under the city charter. Moreover, there are no provisions in the Revised Code that provide a protest procedure regarding a late acceptance of nomination; therefore R.C. 3501.39(A)(1) does not apply.

{¶ 23} However, R.C. 3501.39(A)(2) permits protests that claim that "the petition violates any requirement established by law." Because DeCamp's protest claims that Webb violated the city charter, this section does apply. In holding that the protest was time-barred pursuant to R.C. 3501.39, the *Harbarger* court stated that "the protesters [could not] rely on the protest procedure in R.C. 3501.39(A)(2), *which contains no time requirement,* to circumvent the specific statutory protest procedure of R.C. 3513.05, as incorporated in R.C. 3501.39(A)(1)." (Emphasis added.) *Harbarger* at 46. The *Harbarger* court concluded that the board was also barred by the time limitations set forth in R.C. 3501.39(B) from sua sponte invalidating a declaration of candidacy pursuant to R.C. 3501.39(A)(3). Therefore, the Cuyahoga County Board of Elections was unauthorized, pursuant to R.C. 3501.39 and 3513.05, to "rule on the validity of the petitions filed by relators and placement of their names on the primary election ballot." Id. at 47. The *Harbarger* court eventually granted the writ of prohibition to prohibit the board from holding a protest hearing for the purpose of invalidating the petitions.

{¶ 24} This court is left to determine the applicability R.C. 3501.39(C)(1), enacted in 2006, well after the *Harbarger* court determined that R.C. 3501.39(A)(2) had no time limitation. We hold that the time limit set forth in R.C. 3501.39(C)(1) limits the board's authority to invalidate a petition filed in a municipal election with a filing date that occurs after 90 days before the day of the election, *either sua sponte or after a valid protest is filed*. As previously stated, R.C. 3501.39(B) specifically limits the time in which a board may invalidate a petition on its own initiative pursuant to R.C. 3501.39(A)(3). In contrast, R.C. 3501.39(C)(1) contains no such language limiting its application to R.C. 3501.39(A)(3). Had the legislature intended R.C. 3501.39(C)(1) to limit only the time in which a board could sua sponte invalidate a petition under R.C. 3501.39(A)(3), it would have specifically provided for this, as it did in R.C. 3501.39(B). Rather, the purpose of R.C. 3501.39(C)(1) is to take into account charter municipal elections, which often provide for later filing deadlines than county or state elections governed by the Revised Code. This interpretation accords with the secretary of state's analysis of the purpose for protest cut-off dates, as stated in its *Harbarger* brief: "[T]o resolve questions regarding the validity of a candidacy before the statutory deadline and for the preparation of the official ballot for the primary election," and to conduct "thorough, efficient, uniform and fair elections." Thus, R.C. 3501.39(C)(1) limits the time the board may invalidate a contested petition in a municipal election to 15 days after the date of the filing deadline, regardless of whether a protest is filed. Here, the board would have had only until August 12, 2011, 15 days from the date Webb's acceptance of nomination was alleged to have been due, to invalidate the petition. Consequently, the board's attempt to hold a protest hearing on Webb's petition is legally unauthorized under R.C. 3501.39, insofar as it would rule on the validity of Webb's name being placed on the primary-election ballot.

{¶ 25} Moreover, we further determine that the DeCamp protest is unauthorized by law, specifically under the doctrine of laches. Laches is an affirmative defense based upon a failure to assert a right for an unreasonable length of time. *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328. Because of the imminence of the primary election, we find laches appropriate here.

{¶ 26} " 'Laches may bar an action for relief in an election-related matter if the persons seeking this relief fail to act with the requisite diligence.' " *State ex rel. Painter v. Brunner*, 128 Ohio St.3d 17, 2011-Ohio-35, 941 N.E.2d 782, ¶ 25, quoting *Smith v. Scioto Cty. Bd. of Elections*, 123 Ohio St.3d 467, 2009-Ohio-5866, 918 N.E.2d 131, ¶ 11. "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the

other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277.

{¶ 27} The DeCamp protest argues that Webb's acceptance of nomination was due on July 28, 2011. In fact, the parties stipulate that the board did not receive Webb's acceptance of nomination until August 4, 2011. Thereafter, the board began printing absentee ballots on August 9, 2011, for the primary election. Yet DeCamp waited to file his protest until August 18, 2011, some 21 days after he had the right to assert his protest. We find that this was an unreasonable delay. See, e.g., *Paschal v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 141, 142, 656 N.E.2d 1276 (holding that a delay of nine days in bringing action constituted laches.) Further, in his protest letter, admitted by stipulation of the parties, DeCamp gives no excuse for his delay. Webb's filing was also publicly available as of August 4, 2011. Finally, the prejudice to which relators assert is that Webb's name will not be on the ballot for the primary election should the DeCamp protest succeed. Accordingly, we find that relators have established the second requirement for extraordinary relief in prohibition.

{¶ 28} For the foregoing reasons, we grant relators a writ of prohibition to prevent the board from conducting a hearing on the DeCamp protest for the purpose of invalidating Webb's petition.

{¶ 29} Writ granted. Respondents ordered to pay the costs pursuant to App.R. 24.

{¶ 30} To the clerk: Manner of service.

{¶ 31} The sheriff of Lucas County shall immediately serve, upon the respondents by personal service, a copy of this writ pursuant to R.C. 2731.08.

{¶ 32} The clerk is further directed to immediately serve upon all other parties a copy of this writ in a manner prescribed by Civ.R. 5(B).

{¶ 33} It is so ordered.

Writ granted.

YARBROUGH, TRAPP, and DINKELACKER, JJ., concur.

MARY JANE TRAPP, J., of the Eleventh District Court of Appeals, and PATRICK TIMOTHY DINKELACKER, J., of the First District Court of Appeals, sitting by assignment.