THE STATE EX REL. YEAGER *v.* RICHLAND COUNTY BOARD

OF ELECTIONS ET AL.

[Cite as *State ex rel. Yeager v. Richland Cty. Bd. of Elections,*

**136 Ohio St.3d 327, 2013-Ohio-3862.**]

*Elections—Mandamus—R.C. 3501.39—Action to compel board of elections to place relator's name on the ballot—Board's decision to invalidate relator's candidacy was improper—Writ granted.*

(No. 2013-1312—Submitted September 3, 2013—Decided September 9, 2013.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1}   This is an expedited election action by relator, Carl H. Yeager Jr., for a writ of mandamus to compel respondents, the Richland County Board of Elections and its members ("the board"), to place his name on the November 5, 2013 ballot as the Republican Party candidate for the Mansfield City Council, representing the 5th Ward.  Because the board acted in disregard of clearly established law by refusing to place Yeager's name on the ballot, we grant the writ.

**Facts**

{¶ 2}   Yeager submitted a declaration of candidacy to the Richland County Board of Elections on January 31, 2013, declaring his intention to seek the Republican Party nomination to represent the 5th Ward in the Mansfield City Council.  The petitions he submitted along with the declaration contained sufficient valid signatures.

{¶ 3}   Yeager was the only person to file a declaration of candidacy to run for that office in the primary.

**{¶ 4}** R.C. 3513.02 provides that if in an odd-numbered year, the number of declared candidates seeking a particular party's nomination does not exceed the number of candidates that party is entitled to nominate, then no primary will be held, and election officials shall certify the declared candidate(s) for inclusion on the general-election ballot. Pursuant to that statute, the board of elections, at its March 14, 2013 meeting, sustained a motion to certify Yeager's candidacy for the general-election ballot without a primary.

**{¶ 5}** Subsequently, on April 2, 2013, the board determined that Yeager was not a qualified elector in the 5th Ward and did not reside at 462 Lily Street, the address listed on his voter-registration form.

**{¶ 6}** On July 9, 2013, the board officially voted to remove Yeager's name from the November ballot on the grounds that he did not live at the Lily Street address.

**{¶ 7}** Yeager commenced this expedited election action for a writ of mandamus on August 14, 2013, to compel the board to place his name on the general-election ballot. The board filed an answer, and the parties filed briefs under the accelerated schedule in S.Ct.Prac.R. 12.08(A).

**{¶ 8}** This cause is now before the court for consideration of the merits.

**Analysis**

*Laches*

**{¶ 9}** At the outset, we reject the board's claim that this action is barred by laches. Laches may bar relief in an election-related matter if the person seeking relief fails to act with " 'the requisite diligence.' " *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 16, quoting *Smith v. Scioto Cty. Bd. of Elections*, 123 Ohio St.3d 467, 2009-Ohio-5866, 918 N.E.2d 131, ¶ 11.

**{¶ 10}** To demonstrate laches, the complaining party must show (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse

2

for the delay, (3) actual or constructive knowledge of the injury or wrong, and (4) prejudice. *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).

{¶ 11} The board claims that Yeager knew as of April 2, 2013, that the board would not place his name on the November ballot and therefore his delay of over four months was unreasonable and prejudicial. We disagree.

{¶ 12} The board took no action with respect to Yeager's placement on the ballot at the April 2, 2013 hearing. According to the minutes of that meeting, the only official vote taken was to declare that "for the purpose of voting, Mr. Yeager was determined not to be a qualified elector at the address listed on his voter registration form of 462 Lily Street in Mansfield 5-B precinct, and to refer Mr. Yeager's candidacy for Mansfield 5th Ward Council to the County Prosecutor to determine how to proceed in this matter." Clearly, the board left the question of Yeager's candidacy for another day.

{¶ 13} The board did not vote to remove Yeager from the ballot until July 9, 2013. Yeager should not be penalized for the board's three-month delay in taking formal action.

{¶ 14} The board does not allege, and this court does not believe, that the lapse of time between the July 9, 2013 vote and the August 14, 2013 filing of the complaint justifies a finding of laches. This result is consistent with the " 'fundamental tenet of judicial review in Ohio,' " which is " 'that courts should decide cases on their merits.' " *Voters First*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 21, quoting *State ex rel. Becker v. Eastlake*, 93 Ohio St.3d 502, 505, 756 N.E.2d 1228 (2001).

*Mandamus*

{¶ 15} For a writ of mandamus to issue, Yeager must establish a clear legal right to placement of his name on the November 5, 2013 ballot, a corresponding clear legal duty on the part of the board of elections and its

members to place his name on the ballot, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Allen v. Warren Cty. Bd. of Elections*, 115 Ohio St.3d 186, 2007-Ohio-4752, 874 N.E.2d 507, ¶ 8. Yeager must prove these requirements by clear and convincing evidence. *State ex rel. Orange Twp. Bd. of Trustees v. Delaware Cty. Bd. of Elections*, 135 Ohio St.3d 162, 2013-Ohio-36, 985 N.E.2d 441, ¶ 14.

{¶ 16} Because of the proximity of the November 5 election, and specifically the September 21, 2013 deadline for finalizing ballots in accordance with the Uniformed and Overseas Citizens Absentee Voting Act,[1] Yeager has established that he lacks a remedy in the ordinary course of the law. *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 27.

*Clear Legal Right and Clear Legal Duty*

{¶ 17} Yeager claims that the board lacked authority to remove his name from the ballot after it certified his candidacy and that he has a clear legal right to have his name placed on the ballot.

{¶ 18} R.C. 3501.39 governs challenges to a candidate's declaration of candidacy or nominating petition. That statute provides:[2]

> (A) The secretary of state or a board of elections shall accept any petition described in section 3501.38 of the Revised Code unless one of the following occurs:
>
> * * *

---

1. Pursuant to R.C. 3511.04(B), the board of elections must provide absent-voter ballots upon request to certain uniformed service members, their families, and other citizens under the Uniformed and Overseas Citizens Absentee Voting Act no later than 45 days before the general election.

2. R.C. 3501.39(A)(1), which deals with alleged defects in nominating petitions, is inapplicable.

(2) A written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition violates any requirement established by law.

(3) The candidate's candidacy or the petition violates the requirements of this chapter, Chapter 3513. of the Revised Code, or any other requirements established by law.

**{¶ 19}** Yeager argues that the board of elections was without authority to invalidate his petition under R.C. 3501.39(A)(2) because no one filed a written protest against his candidacy, a necessary prerequisite to invoking that provision. Nor could the board act sua sponte to invalidate his petition under R.C. 3501.39(A)(3), he contends, because any such action was time-barred. We consider these claims in reverse order.

**{¶ 20}** R.C. 3501.39(B) imposes a time limit upon the board's ability to invalidate petitions.

[A] board of elections shall not invalidate any declaration of candidacy or nominating petition under division (A)(3) of this section after the sixtieth day prior to the election at which the candidate seeks nomination to office, if the candidate filed a declaration of candidacy, or election to office, if the candidate filed a nominating petition.

The 60th day before the May 7, 2013 primary was March 8, 2013. After March 8, 2013, R.C. 3501.39(B) deprived the board of elections of authority to invalidate

Yeager's petition under R.C. 3501.39(A)(3). *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 19.

{¶ 21} The board suggests that *Whitman* does not apply to these facts, because in that case, a primary election actually occurred, whereas in this case, no primary was held. "Because there was no election regarding nomination to the office in question," the board suggests, "the only other election from which the sixty day period can be calculated is the date of the general election." Thus, the board contends, rather than counting backward 60 days from the primary date of May 7, 2013, the court should count backward 60 days from the November 5, 2013 general election, in which case the board's actions would be timely.

{¶ 22} The board's argument is inconsistent with the plain language of the statute. R.C. 3501.39(B) clearly states that if a candidate files a declaration of candidacy, a board of elections shall not invalidate a declaration of candidacy or nominating petition under section (A)(3) after the 60th day "prior to the election at which the candidate seeks *nomination*." (Emphasis added.) The election at which Yeager sought nomination was the May 7, 2013 primary, not the November 5, 2013 general election. The statute contains no language allowing the board to fix a new deadline in the event the primary is not required.

{¶ 23} Consistent with *Whitman*, we find that the board's removal of Yeager's name from the ballot was untimely.

{¶ 24} We also agree with Yeager that the board's action cannot be sustained under the protest provision of R.C. 3501.39(A)(2).

{¶ 25} Protests against a person who files a declaration of candidacy for party nomination must be in writing, must be filed by a qualified elector of the same political party who is eligible to vote in that primary election, and must be filed no later than the 74th day before the day of the primary election. R.C. 3513.05, 13th paragraph. The board has presented no evidence that an elector filed a protest meeting these requirements against Yeager's candidacy.

6

**{¶ 26}** The board suggests that the transcript of the April 2, 2013 hearing constituted a written protest. However, the April 2, 2013 transcript satisfies none of the statutory requirements for a protest. First, the transcript was not prepared 74 days before the May 7 primary, so if it was a written protest, it was untimely.

**{¶ 27}** Second, the transcript was created by the board, which is not a qualified elector.

**{¶ 28}** Third, a protest must specifically inform the candidate of the basis for the protest. *State ex rel. Ryant Comm. v. Lorain Cty. Bd. of Elections*, 86 Ohio St.3d 107, 112-113, 712 N.E.2d 696 (1999). The transcript does not satisfy that notice requirement because the only issue the board discussed was Yeager's residency as it related to his eligibility to vote. The board offered no comment about the prospect of removing him from the ballot, other than to seek an opinion from the county prosecutor.

**{¶ 29}** Fourth, when the board of elections receives a protest, it is required to "promptly fix the time for hearing" the protest and notify the candidate of the protest and the time set for hearing. R.C. 3513.05, 13th paragraph. Between April 2, 2013, and the board's vote on July 9, 2013, the board did not schedule a hearing on the matter, nor did it afford Yeager an opportunity to be heard.

**{¶ 30}** The board points out that Yeager had the opportunity to address the residency allegation at the April 2, 2013 hearing, but he chose to stay silent. But requiring a candidate to respond to allegations *before* serving formal written notice of the allegations does not comport with the Revised Code or with basic notions of due process.

**{¶ 31}** Thus, we find that under either R.C. 3501.39(A)(2) or R.C. 3501.39(A)(3), the board's decision to invalidate Yeager's candidacy was improper. In reaching this result, this court expresses no opinion as to whether Yeager is a qualified elector in the 5th Ward. In the event that Yeager wins the election and is in fact statutorily unqualified to assume the office, then a remedy

will lie in quo warranto to remove him from office. *Whitman*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, at ¶ 24.

**{¶ 32}** The Richland County Board of Elections disregarded clearly established law when it invalidated Yeager's petition and removed him from the November 5, 2013 ballot. For this reason, Yeager has a clear legal right to have his name on the ballot, the board has a clear legal duty to place his name on the ballot, and, given the proximity of the election, Yeager has no adequate remedy in the ordinary course of the law.

### Conclusion

**{¶ 33}** Based on the foregoing, Yeager has established his entitlement to the requested extraordinary relief. We therefore grant a writ of mandamus to compel the Richland County Board of Elections to place his name on the November 5, 2013 ballot as the Republican Party candidate for the Mansfield City Council, representing the 5th Ward.

Writ granted.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

The Law Firm of Curt C. Hartman and Curt C. Hartman; and Finney, Stagnaro, Saba & Patterson Co., L.P.A., and Christopher P. Finney, for relator.

Isaac, Wiles, Burkholder & Teetor, L.L.C., J. Stephen Teetor, and Craig R. Mayton, for respondents.

_____