[Cite as *State ex rel. Davis v. Summit Cty. Bd. of Elections,* 137 Ohio St.3d 222, 2013-Ohio-4616.]

THE STATE EX REL. DAVIS *v.* SUMMIT COUNTY BOARD OF ELECTIONS.

[Cite as *State ex rel. Davis v. Summit Cty. Bd. of Elections,*

137 Ohio St.3d 222, 2013-Ohio-4616.]

*Elections—Independent candidates—Good-faith declaration of disaffiliation from party.*

(No. 2013-1533—Submitted October 14, 2013—Decided October 18, 2013.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1}   Relator, Darrita Davis, filed this expedited elections case seeking a writ of mandamus to compel respondent, the Summit County Board of Elections, to place her name on the November 5, 2013 ballot as an independent candidate for Akron City Council.   Because Davis has established her entitlement to extraordinary relief, we grant the writ.

**Facts**

{¶ 2}   Darrita Davis is a qualified elector in Summit County and a resident of Akron, Ward 10.   On July 2, 2013, Davis submitted a nominating petition to run as an independent candidate in the November 5, 2013 general election, to represent Ward 10 on the Akron City Council.

{¶ 3}   On or around September 23, 2013, the board wrote a letter to Davis stating that her petition "was determined to be invalid."   The letter offered no explanation.

{¶ 4}   Davis commenced this original action on September 27, 2013.   The parties submitted briefs in accordance with the accelerated briefing schedule for expedited elections cases in S.Ct.Prac.R. 12.08(A)(2).

{¶ 5}   This cause is now before the court for consideration of the merits.

**Analysis**

*Laches*

{¶ 6}   At the outset, we reject the board's attempt to invoke laches. Laches may bar relief in an election-related matter if the person seeking relief fails to act with "requisite diligence." *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 16, quoting *Smith v. Scioto Cty. Bd. of Elections*, 123 Ohio St.3d 467, 2009-Ohio-5866, 918 N.E.2d 131, ¶ 11.

{¶ 7}   The record does not demonstrate unreasonable delay on the part of Davis.  The board notified Davis of its decision to reject her petition by letter dated September 23, 2013.  According to her affidavit, Davis did not receive the letter until September 25, 2013.  She filed her complaint two days later, on September 27, 2013.

{¶ 8}   The board argues that Davis learned of the board's decision a full week before she filed suit.  Joseph Masich, director of the Summit County Board of Elections, submitted an affidavit in which he states that he notified Davis of the board's decision by telephone on September 20, 2013.  Davis neither admits nor denies that the conversation occurred.  However, even assuming that she knew of the board's decision on September 20, we are not persuaded that laches should apply.

{¶ 9}   Under the circumstances, the court does not regard the passage of five business days as an unreasonable delay.  *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, ___ Ohio St.3d __, 2013-Ohio-3867, ___ N.E.2d __, ¶ 15 (relator acted diligently by filing complaint five business days after receiving hearing transcript).

{¶ 10} Moreover, a party asserting a laches defense must demonstrate that it has been prejudiced by the other party's delay.  *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 19.   The

board alleges injury because absentee voting has already begun as of October 1. But the board would be facing the same predicament even if Davis had filed suit on September 20, 2013, given the amount of time required to brief and decide an expedited elections matter. The timing of Davis's filing has not prejudiced the board. *State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 21 (laches did not bar suit, because absentee-ballot deadline would have passed no matter how quickly relator filed suit).

{¶ 11} Therefore, laches does not bar our consideration of the merits of this expedited elections case. The court reaffirms its commitment to the principle that "the fundamental tenet of judicial review in Ohio is that courts should decide cases on their merits." *State ex rel. Becker v. Eastlake*, 93 Ohio St.3d 502, 505, 756 N.E.2d 1228 (2001).

*Mandamus*

{¶ 12} For a writ of mandamus to issue, Davis must establish a clear legal right to placement of her name on the November 5, 2013 ballot, a corresponding clear legal duty on the part of the board to place her name on the ballot, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Allen v. Warren Cty. Bd. of Elections*, 115 Ohio St.3d 186, 2007-Ohio-4752, 874 N.E.2d 507, ¶ 8. Davis must prove these requirements by clear and convincing evidence. *State ex rel. Orange Twp. Bd. of Trustees v. Delaware Cty. Bd. of Elections*, 135 Ohio St.3d 162, 2013-Ohio-36, 985 N.E.2d 441, ¶ 14.

{¶ 13} Because of the proximity of the November 5 election, Davis lacks an adequate remedy in the ordinary course of the law. *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 27.

{¶ 14} As for the remaining requirements, in extraordinary actions challenging the decision of a board of elections, the standard is whether the board " 'engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d

288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 9, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11.

{¶ 15} There is no allegation of fraud or corruption. In her first proposition of law, Davis asserts that the board abused its discretion when it disqualified her petition to run as an independent. The board maintains that Davis is not an independent, because she has failed to disaffiliate sufficiently from the Democratic Party.

{¶ 16} The Ohio Revised Code defines an "independent" broadly: any candidate who "claims not to be affiliated with a political party" and who meets specific filing requirements qualifies as an independent candidate. R.C. 3501.01(I). "A voter cannot register as an independent, except in the negative sense of not voting in partisan primaries or signing partisan nominating petitions." *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, ___ Ohio St.3d __, 2013-Ohio-3867, ___ N.E.2d ___, ¶ 28, fn. 2.

{¶ 17} In *Morrison v. Colley*, 467 F.3d 503 (6th Cir.2006), the Sixth Circuit Court of Appeals held that R.C. 3513.257 requires the independent candidate to make a declaration of disaffiliation in good faith. The Ohio secretary of state adopted the *Morrison* holding in an advisory letter to the local boards of elections.

{¶ 18} In this case, the board concluded that Davis had not disaffiliated in good faith based on a single piece of information, namely the fact that Davis voted in a partisan primary in March 2012.

Mr. Arshinkoff: But she voted in the September—she voted in the May Primary or whenever it was.

Mr. Galonski: March 2012.

Mr. Arshinkoff: March 2012 Primary.

Mr. Galonski: Right.

Mr. Arshinkoff: She's a Democrat.

Ms. Zurz: She voted in the Presidential Primary.

Mr. Arshinkoff: That's the ultimate arbitrator [sic]. That's the granddaddy of them all when you're voting for President.

This was an abuse of discretion.

{¶ 19} A candidate's prior voting history, standing alone, cannot be a sufficient basis for disqualifying an independent candidate. *See State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, ___ Ohio St.3d __, 2013-Ohio-4490, ___ N.E.2d __, ¶ 24 (Oct. 10, 2013); *State ex rel. Wilkerson v. Trumbull Cty. Bd. of Elections*, 11th Dist. Trumbull No. 2007-T-0081, 2007-Ohio-4762, ¶ 18. Disaffiliation *by definition* presumes a history of support for or membership in a political party. If a candidate's prior voting record, standing alone, could trump a declaration of disaffiliation, then disaffiliation would never be possible. Therefore, the board does not strengthen its argument by claiming that Davis also voted a Democratic ballot in the 2010, 2008, and 2006 primary elections.[1]

{¶ 20} The board overemphasized Davis's 2012 primary participation because it made an error of law. R.C. 3513.05 (paragraph 3) requires candidates seeking nomination or election to certain offices to obtain petition signatures from members of the same political party. "For purposes of signing or circulating a petition of candidacy for party nomination or election, an elector is considered to be a member of a political party if the elector voted in that party's primary election within the preceding two calendar years, or if the elector did not vote in any other party's primary election within the preceding two calendar years." R.C. 3513.05 (paragraph 7).

---

1. The evidence shows that she voted in a Democratic primary in two of those years, but not in 2010.

**{¶ 21}** The board erroneously applied this two-year look-back provision for petition signatures to the separate analysis of disaffiliation under R.C. 3513.257. According to the board, "[b]ecause there is no law that specifies how a person disaffiliates from a political party for the purposes of running as [an independent] candidate, the Board made a reasonable comparison to Ohio's law on how a person disaffiliates from a political party for purposes of signing a petition."

**{¶ 22}** The General Assembly expressly wrote a two-year look-back requirement for petition signatures into R.C. 3513.05. Had the legislature intended the same rule to apply to claims of disaffiliation, it would have been a simple matter to draft R.C. 3513.257 accordingly, but the legislature did not do so.

**{¶ 23}** The practical effect of the board's rule is the creation of a de facto "sit out" requirement, whereby candidates who disaffiliate from a political party have to wait at least two years before they may seek office as independents. Nothing in R.C. 3513.257 requires such a result. Furthermore, adopting such a rule would conflict with this court's precept that courts should liberally construe election laws in favor of persons seeking to hold office so as to avoid restricting the right of electors to choose among qualified candidates. *State ex rel. Lynch v. Cuyahoga Cty. Bd. of Elections*, 80 Ohio St.3d 341, 343, 686 N.E.2d 498 (1997).

**{¶ 24}** Apart from Davis's limited voting history, the board has presented only two pieces of evidence to suggest that her claim of disaffiliation was a sham or not made in good faith. On April 13, 2013, Davis attended an event in support of a Democratic candidate for city council and donated $25. And on June 15, 2013, Davis attended an event for another Democratic candidate and donated $20. The board points to these donations as evidence of Davis's continuing connection to the Democratic Party.

6

**{¶ 25}** We concede the relevance of this evidence, but deem it entitled to little weight for two reasons. First, there is no necessary correlation between donations and political affiliation. Second, and more importantly, these donations occurred before Davis filed her declaration of candidacy on July 2, 2013, so again, they shed little light on the sincerity of her declaration as of the date it was made.

**{¶ 26}** When courts have refused to allow an independent onto the ballot, they have identified at least some postpetition evidence to undermine the disaffiliation claim. *E.g.*, *Jolivette v. Husted*, 694 F.3d 760, 767 (6th Cir.2012) (candidate held himself out as a Republican in campaign filings and on Facebook after filing to run as an independent); *Morrison v. Colley*, 467 F.3d 503, 510 (candidate voted in a partisan primary after he filed his nominating petition as an independent); *State ex rel. Lorenzi v. Mahoning Cty. Bd. of Elections*, 7th Dist. Mahoning No. 07 MA 127, 2007-Ohio-5879, ¶ 27 (same); *State ex rel. Wilkerson v. Trumbull Cty. Bd. of Elections*, 11th Dist. Trumbull No. 2007-T-0081, 2007-Ohio-4762, ¶ 24 (same).

**{¶ 27}** This court has never held that a successful *Morrison* challenge requires postpetition evidence, and we do not so declare today. But where the challenge is based solely on prepetition evidence, the evidence needs to be that much more substantial to warrant excluding an otherwise qualified candidate. The board abused its discretion because it lacked sufficient evidence that Davis's declaration was a sham or made in bad faith. *State ex rel. Livingston v. Miami Cty. Bd. of Elections*, 196 Ohio App.3d 263, 2011-Ohio-6126, 963 N.E.2d 187, ¶ 35 (2d Dist.).

**{¶ 28}** In addition, the board abused its discretion because it fundamentally misconstrued the relevant inquiry. Based on her past voting record, the board informs the court, "the Board determined that Relator did not make a good faith attempt to disaffiliate from the Democratic Party." But the

requirement imposed by R.C. 3513.257 and *Morrison v. Colley* is that a candidate must declare her lack of affiliation in good faith, not that she take affirmative action to disaffiliate in order to prove her good faith. In other words, the declaration of disaffiliation can, in some circumstances, be sufficient affirmative action.

**{¶ 29}** As noted above, one cannot register with the secretary of state's office as an independent. So for a candidate such as Davis, who according to the record has never held an elective partisan office or a governance position within a political party, what possible action could she take, other than signing her declaration of candidacy under oath, to meet the board's demand that she "make a good faith attempt to disaffiliate from the Democratic Party"?

**{¶ 30}** The board's insistence that she offer concrete examples of how she has disaffiliated is particularly troubling because the board did not conduct an evidentiary hearing or afford Davis any opportunity to be heard. To be clear, when a board disqualifies a petition on its own initiative under R.C. 3501.39(A)(3), the board is not required to give the candidate notice or a hearing. But a board cannot elect to forgo an evidentiary hearing and then fault the candidate for not presenting evidence on her own behalf.

**{¶ 31}** We find that Davis's first proposition of law is well taken.

**{¶ 32}** In her second proposition of law, Davis argues that the board was time-barred from disqualifying her petitions. We reject this proposition.

**{¶ 33}** A board's authority under R.C. 3501.39(A)(3) to invalidate a candidate petition on its own initiative is subject to a time limitation in R.C. 3501.39(B). *State ex rel. Yeager v. Richland Cty. Bd. of Elections*, ___ Ohio St.3d __, 2013-Ohio-3862, 995 N.E.2d 228, ¶ 20 (Sept. 9, 2013). If a candidate files a nominating petition to run in the general election, the board cannot invalidate the petition after the 60th day before the election. In this case, the

board acted on September 20, 2013, 46 days before the November 5, 2013 election. Based on these facts, Davis argues that the board exceeded its authority.

{¶ 34} However, the time limit in R.C. 3501.39(B) is expressly subject to its own exception: "If a petition is filed for the nomination or election of a candidate in a charter municipal corporation with a filing deadline that occurs after the ninetieth day before the day of the election, a board of elections may invalidate the petition within fifteen days after the date of that filing deadline." R.C. 3501.39(C)(1).

{¶ 35} In Akron, the filing deadline for independent candidates was September 9, 2013. The board invalidated Davis's petition 11 days after the filing deadline, well within the 15-day window permitted under R.C. 3501.39(C). We therefore reject proposition of law No. 2.

**Conclusion**

{¶ 36} Based on the foregoing, we find that the board abused its discretion when it refused to place Davis's name on the ballot, and we grant the requested writ.

Writ granted.

O'CONNOR, C.J., and PFEIFER, KENNEDY, and O'NEILL, JJ., concur.

O'DONNELL and LANZINGER, JJ., dissent.

FRENCH, J., dissents without opinion.

_____

**O'DONNELL, J., dissenting.**

{¶ 37} Respectfully, I dissent.

{¶ 38} R.C. 3513.257 governs nominating petitions for independent candidates, but it does not contain a bright line test for determining whether a candidate is disaffiliated from a party. The standard is whether a candidate has disaffiliated from a party in good faith, *Morrison v. Colley*, 467 F.3d 503 (6th Cir.2006), and the Ohio secretary of state adopted *Morrison* in Advisory No.

2007-05. *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, __ Ohio St.3d __, 2013-Ohio-4490, __ N.E.2d __, ¶ 22 (Oct. 10, 2013). Notably, in that advisory, the secretary of state advised local boards of election that while "voting *history*, alone, is an insufficient basis on which to disqualify an independent candidate * * *, voting history, together with other facts tending to indicate party affiliation, may be sufficient grounds to disqualify an independent [candidate]." (Emphasis sic.)

{¶ 39} Whether a candidate has disaffiliated from a party in good faith thus requires a fact-based determination. Factors that have been considered by this court in making this determination are whether a candidate has voted in a partisan primary, held elective office as a party member, or held a position on a party's central committee at any time after filing a declaration of independent candidacy. *State ex rel. Monroe* at ¶ 24.

{¶ 40} Pursuant to R.C. 3501.39(A)(3), a board of elections "shall accept any petition described in section 3501.38 of the Revised Code unless one of the following occurs: * * * The candidate's candidacy or the petition violates the requirements of this chapter, Chapter 3513. of the Revised Code, or any other requirements established by law."

{¶ 41} Here, the evidence submitted to the court shows that relator, Darrita Davis, voted as a Democrat in the March 2012 primary election, as well as in the March 2008 primary election and the May 2006 primary election. Additionally, the evidence shows that in April 2013, she financially contributed to the campaign committee of Tara Samples, a Democrat, and in June 2013 she financially contributed to the campaign committee of Lucille Humphrey, also a Democrat. It is undisputed that in July 2013 she filed her petition to run as an independent candidate for a position on the Akron City Council.

{¶ 42} In view of Davis's voting history *and* her financial contributions to Democratic candidates in April 2013 and June 2013, the board did not abuse its

10

discretion in concluding that Davis had not in good faith disaffiliated herself from the Democratic Party when she filed her nominating petition to run as an independent candidate.

————————————

**LANZINGER, J., dissenting.**

{¶ 43} The county boards of elections are given little guidance when asked to determine whether an independent candidate has made a good-faith declaration of disaffiliation. In order to vacate the decision of a board of elections and grant a writ of mandamus, a relator must establish that the board's decision resulted from fraud, corruption, abuse of discretion, or clear disregard of applicable law. *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. The term "abuse of discretion" in this context connotes an unreasonable, arbitrary, or unconscionable decision. *State ex rel. Stine v. Brown Cty. Bd. of Elections*, 101 Ohio St.3d 252, 2004-Ohio-771, 804 N.E.2d 415, ¶ 12, citing *State ex rel. Stevens v. Geauga Cty. Bd. of Elections*, 90 Ohio St.3d 223, 226, 736 N.E.2d 882 (2000). Because I believe that the Summit County Board of Elections did not act unreasonably under the circumstances, I would deny the writ.

————————————

Law Offices of Warner Mendenhall and Warner Mendenhall; and Alyssa M. Allen, for relator.

Sheri Bevan Walsh, Summit County Prosecuting Attorney, and John F. Galonski, Assistant Prosecuting Attorney, for respondent.

————————————