[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Bender v. Franklin Cty. Bd. of Elections*, Slip Opinion No. 2019-Ohio-2854.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2854

THE STATE EX REL. BENDER *v*. FRANKLIN COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Bender v. Franklin Cty. Bd. of Elections*, Slip Opinion No. 2019-Ohio-2854.]

*Elections—Mandamus—Writ of mandamus sought to compel board of elections to reinstate relator as city-council candidate on November 2019 general-election ballot—R.C. 3501.39 and 3513.05—Standing of elector to file protest against candidate's petition—R.C. 3513.05 protest hearing is a quasi-judicial proceeding and board of election's ruling must be based on the evidence presented—Writ granted.*

(No. 2019-0767—Submitted July 9, 2019—Decided July 15, 2019.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** Relator, Robert Bender, seeks a writ of mandamus ordering respondent, the Franklin County Board of Elections, to reinstate his certification to

the November 2019 ballot as the Libertarian Party candidate for Reynoldsburg City Council, Ward 3. After initially certifying Bender to the ballot, the board sustained a protest challenging the validity of some of the signatures on Bender's petition. Because no evidence established that the protestor had standing to bring the protest and because it was too late for the board to remove Bender from the ballot sua sponte, we grant a writ of mandamus ordering the board to reinstate Bender as a candidate for the November 2019 general election.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} On February 6, 2019, Bender submitted his declaration of candidacy to be the Libertarian Party nominee for Reynoldsburg City Council, Ward 3. Bender's petition contained 22 signatures. The minimum number of valid signatures necessary for Bender to qualify for the ballot was 13. Jeffrey Mackey, the manager of petitions and campaign finance for the board, examined the signatures and determined that 13 of them were valid and that the petition therefore met the signature requirement. Because no other candidate sought the Libertarian nomination for the Ward 3 council seat, no primary election for that seat was necessary. *See* R.C. 3513.02. Accordingly, on February 19, the board certified Bender to the November 5, 2019 general-election ballot.

{¶ 3} On February 22, the board received a timely written protest from John H. Duus, who challenged the validity of six of the previously validated signatures on Bender's petition. On March 4, the board sent Bender a letter notifying him of Duus's protest and informing Bender that he would be notified again once a date for hearing the protest had been set. On May 9, two days after the primary election, the board notified Bender that it would hear Duus's protest at a meeting scheduled for May 28. On May 28, the board received a letter from Bender's attorney objecting to the hearing as untimely under R.C. 3501.39(B) and 3513.05.

{¶ 4} At the May 28 meeting, neither Duus nor any representative for Duus appeared. Bender's attorney addressed the board, arguing that it should dismiss the

protest for lack of standing because Duus had presented no evidence that he was a member of the Libertarian Party. Bender's attorney also argued that the board had no authority to remove Bender from the ballot after the primary election. In light of the legal issues raised by Bender's attorney, the board continued the hearing to June 3.

**{¶ 5}** At its June 3 meeting, the board heard from Mackey and the board's attorney, who opined that neither the concern pertaining to standing nor the concern pertaining to timeliness prohibited the board from considering the merits of the protest. The board also heard from Bender's attorney, who noted the continued absence of Duus or any representative for Duus and presented rebuttal arguments on the issues of standing and timeliness. The board then considered the protest and examined the six signatures questioned in the protest letter, comparing them to the electors' signatures on file. Despite Mackey's statement at the May 28 hearing that all 13 validated signatures were "within the bounds of what we generally look for," at the subsequent June 3 hearing, the board determined that three of the challenged signatures did not match the signatures on file. Because this left Bender three signatures short of the required 13, the board sustained the protest and removed Bender from the November ballot.

**{¶ 6}** Bender filed this mandamus action on June 7, seeking a writ of mandamus ordering the board to again certify him as the Libertarian Party nominee for Reynoldsburg City Council, Ward 3 for the November 5, 2019 general election. We granted Bender's motion to expedite, 156 Ohio St.3d 1412, 2019-Ohio-2413, 124 N.E.3d 838, and the case has now been fully briefed.

## II. ANALYSIS

### A. Mandamus Standard

**{¶ 7}** To be entitled to a writ of mandamus, a relator must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate

remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. Given the proximity of the November 2019 election, Bender does not have an adequate remedy in the ordinary course of the law. *See*, *e.g.*, *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18. When reviewing the decision of a county board of elections, the standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, 45 N.E.3d 994, ¶ 29.

### B. Statutory Timeliness and Standing Requirements

**{¶ 8}** There are two circumstances under which a board of elections may declare a candidate's petition invalid: in response to a written protest (R.C. 3501.39(A)(1) and (2)) or sua sponte (R.C. 3501.39(A)(4)). To invalidate a petition sua sponte, a board must act on or prior to the 60th day before the primary election—even if no primary is required. R.C. 3501.39(B); *State ex rel. Yeager v. Richland Cty. Bd. of Elections*, 136 Ohio St.3d 327, 2013-Ohio-3862, 995 N.E.2d 228, ¶ 22. That time limit does not apply to a board's action in response to a written protest. While the protest itself must be filed by 4 p.m. on the 74th day before the primary election, a board must only "promptly fix the time for hearing it." R.C. 3513.05, paragraph 13; *see also State ex rel. Harbarger v. Cuyahoga Cty. Bd. of Elections*, 75 Ohio St.3d 44, 46, 661 N.E.2d 699 (1996). But another significant limitation does apply to written protests: only the controlling committee of a political party or a qualified elector who is a member of the same political party as the protested candidate and who is eligible to vote for the candidate in the primary election may protest a candidate's petition. R.C. 3513.05, paragraph 13.

### C. The Board Abused Its Discretion

**{¶ 9}** Because the board did not act until well after the 60th day before the primary election, it was not statutorily authorized to act sua sponte. *See Harbarger*

at 46. The board claims to have acted in response to Duus's written protest. However, Duus's protest letter did not state that he was a member of the Libertarian Party, nor did he attach an affidavit to his letter, and the board had before it no affirmative evidence regarding Duus's party membership. Instead, the board found that Duus qualified as a member of the Libertarian Party based on his recent voting record, which showed that he had not voted in any party's primary election within the previous two calendar years. However, no evidence established that Duus identified as a member of the Libertarian party at the time he filed the protest. As such, the board abused its discretion by removing Bender from the ballot based on Duus's protest.

{¶ 10} The board argues that its reliance on Duus's voting record comports with R.C. 3513.05, paragraph 7, which provides:

> *For purposes of signing or circulating a petition of candidacy for party nomination or election*, an elector is considered to be a member of a political party if the elector voted in that party's primary election within the preceding two calendar years, or if the elector did not vote in any other party's primary election within the preceding two calendar years.

(Emphasis added.) The board acknowledges that paragraph 7 of R.C. 3513.05 specifically applies to petition signers and circulators and that it does not mention protestors. But the board contends that it would be illogical not to extend the provision to protestors. We disagree.

{¶ 11} The board's application of paragraph 7 of R.C. 3513.05 in this case operated as a presumption that permitted the board to make a necessary determination—that the protestor met a statutory standing requirement—in a quasi-judicial proceeding, without evidence to support that determination. An R.C.

3513.05 protest hearing is a quasi-judicial proceeding. *State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 16; *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 80 Ohio St.3d 302, 306, 686 N.E.2d 238 (1997) ("a board of elections * * * is a quasi-judicial body when it considers protests"). And " '[q]uasi-judicial authority is the power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial.' " (Emphasis deleted.) *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections*, 90 Ohio St.3d 238, 241, 736 N.E.2d 893 (2000), quoting *State ex rel. Wright v. Ohio Bur. of Motor Vehicles*, 87 Ohio St.3d 184, 186, 718 N.E.2d 908 (1999).

{¶ 12} "[I]rrebuttable presumptions" are disfavored when "the fact presumed is an essential constitutional or statutory predicate to government action." *Granzow v. Montgomery Cty. Bur. of Support*, 54 Ohio St.3d 35, 37, 560 N.E.2d 1307 (1990). More broadly, "[a] finding without evidence to support it is arbitrary and unlawful." *Gen. Motors Corp. v. Baker*, 92 Ohio App. 301, 309, 110 N.E.2d 12 (2d Dist.1952). In *State ex rel. Beck v. Hummel*, 150 Ohio St. 127, 80 N.E.2d 899 (1948), this court held that the secretary of state abused his discretion by blocking the Ohio Wallace-for-President Committee from placing presidential and vice-presidential candidates on the Ohio ballot for the 1948 national election based on a presumption that communists on the committee advocated the overthrow of the government. The court explained that an administrative official acts arbitrarily when there is not "some substantial evidence to support the finding and determination" made by the official. *Id.* at 138.

{¶ 13} "Party affiliation in Ohio is purely a matter of self-identification, and that self-identification is subject to change." *State ex rel. Stevens v. Fairfield Cty. Bd. of Elections*, 152 Ohio St.3d 584, 2018-Ohio-1151, 99 N.E.3d 376, ¶ 20; *State ex rel. Young v. Gasser*, 21 Ohio St.2d 253, 257, 257 N.E.2d 389 (1970) ("party affiliation or membership is that which [the voter] desires it to be from time to

time"). Duus's failure to vote in a primary election in the two calendar years before he filed his protest against Bender's candidacy did not constitute evidence that at the time he filed the protest, Duus specifically identified as a member of the Libertarian Party.

{¶ 14} The board's reliance on a presumption in place of actual evidence of Duus's party membership was particularly problematic in this case because under R.C. 3501.39(B), the time for the board to remove Bender from the ballot sua sponte had already passed. By taking action without evidence that the protest was proper, the board essentially acted sua sponte outside the statutory period for doing so.

{¶ 15} The board's reliance on *Stevens* and on the secretary of state's *Ohio Election Official Manual* is unavailing. In *Stevens*, this court accepted the parties' agreement that paragraph 7 of R.C. 3513.05 applied in the context of a candidacy for membership in a political party's state central committee under R.C. 3517.03. *Stevens* at ¶ 15, 17. However, candidacy for membership in a political party's central committee is closely analogous to the situation to which paragraph 7 of R.C. 3513.05 expressly applies—"candidacy for party nomination or election." And in those situations, the statute *facilitates* ballot access. *See State ex rel. Reese v. Cuyahoga Cty. Bd. of Elections*, 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 34 (noting this court's "duty to liberally construe words limiting the right of a person to hold office in favor of those seeking to hold office so that the public may have the benefit of choice from all qualified persons").

{¶ 16} By contrast, in *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, we held that a board of elections erred by applying paragraph 7 of R.C. 3513.05 to determine whether an individual seeking to run as an independent candidate under R.C. 3513.257 had disaffiliated from her prior political party. In that situation (in which application of paragraph 7 of R.C. 3513.05 would have *prevented* ballot access) we explained:

The board erroneously applied [the] two-year look-back provision for petition signatures [in R.C. 3513.05, paragraph 7] to the separate analysis of disaffiliation under R.C. 3513.257. According to the board, "[b]ecause there is no law that specifies how a person disaffiliates from a political party for the purposes of running as [an independent] candidate, the Board made a reasonable comparison to Ohio's law on how a person disaffiliates from a political party for purposes of signing a petition."

The General Assembly expressly wrote a two-year look-back requirement for petition signatures into R.C. 3513.05. *Had the legislature intended the same rule to apply to claims of disaffiliation, it would have been a simple matter to draft R.C. 3513.257 accordingly, but the legislature did not do so.*

(Emphasis and first brackets added; additional brackets sic.) *Davis* at ¶ 21-22. Similarly, the legislature has not made paragraph 7 of R.C. 3513.05 applicable to the procedure for protesting and removing a candidate from the ballot under R.C. 3513.05, paragraph 13. Finally, to the extent that the secretary of state's directives in his election manual may support a contrary interpretation, those directives lack authority. *See, e.g.*, *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 34 (the secretary's directives are instructions to local boards of election and are not the law of Ohio).

## III. CONCLUSION

{¶ 17} Because no evidence established the protestor's standing and because the time for sua sponte action by the board had passed, the board abused its discretion by removing Bender from the ballot. Accordingly, we issue a writ of

mandamus ordering the board to reinstate Bender as a candidate for the November 2019 general election.

Writ granted.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only.

————————————

Mark R. Brown and Mark G. Kafantaris, for relator.

Ronald J. O'Brien, Franklin County Prosecuting Attorney, and Timothy A. Lecklider and Nick A. Soulas Jr., Assistant Prosecuting Attorneys, for respondent.

————————————