**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ungaro v. Mahoning Cty. Bd. of Elections,* Slip Opinion No. 2022-Ohio-3318.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3318

THE STATE EX REL. UNGARO *v.* MAHONING COUNTY BOARD OF ELECTIONS

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ungaro v. Mahoning Cty. Bd. of Elections, Slip Opinion No. 2022-Ohio-3318.]***

*Elections—Mandamus—Writ sought to compel board of elections to certify relator's name to the ballot as an independent candidate for state representative—Board of elections abused its discretion—Writ granted.*

(No. 2022-1061—Submitted September 16, 2022—Decided September 22, 2022.)

IN MANDAMUS.

————————

**Per Curiam.**

**{¶ 1}** In this expedited election case, relator, Eric Ungaro, seeks a writ of mandamus ordering respondent, Mahoning County Board of Elections, to place his name on the November 2022 general-election ballot as an independent candidate for the office of state representative.  We grant the writ.  We deny Ungaro's request for attorney fees and the board's motion to strike certain evidence filed by Ungaro.

## I. BACKGROUND

{¶ 2} On July 25, 2022, Ungaro filed a statement of candidacy and nominating petition to run as an independent candidate for the office of state representative of the 59th Ohio House District. The parties do not dispute that the petition was timely filed and contained a sufficient number of valid signatures for Ungaro's name to be placed on the ballot.

{¶ 3} On August 20, the board received a written protest arguing that the board should "invalidate [Ungaro's] candidacy" because Ungaro was "campaigning as a Democrat as evidenced by his website." The protest asserted that Ungaro's website "clearly shows photos of [Ungaro] using the national and local branding of the Democratic Party on yard signs, tee shirts, etc." The protest included three photos taken from Ungaro's campaign website.

{¶ 4} The board addressed Ungaro's petition and the protest at a meeting on August 22. The board chair, David Betras, first suggested that the board accept the petition subject to the protest and then hold a protest hearing at a later date, noting the importance of taking evidence and creating a record. But he went on to state that because he had personally "seen enough," he was going to vote to reject the petition immediately and that he "just wanted to let everyone know that ahead of time."

{¶ 5} After the board initially reached a tie vote on Ungaro's petition, Betras informed the board that he had done "independent research" that led him to conclude that Ungaro had not made "a good faith attempt to disassociate [him]self" from the Democratic Party. On further deliberation, the board revoted, rejecting the petition by a vote of three to one. Betras stated that his vote was based on his personal review of Ungaro's campaign website. The other board members did not explain the reasons behind their votes or indicate that they had looked at Ungaro's campaign website.

{¶ 6} On August 25, Ungaro filed this action seeking to compel the board to place his name on the ballot. He asserts that his current campaign profile, logo, t-shirts, and other campaign materials do not show any affiliation with the

Democratic Party and that the three photos referred to in the protest were taken in 2018 when he ran for state representative as the endorsed Democratic candidate. Ungaro concedes that those three photos are on his current campaign website, but he asserts that the decision to include those photos was based on the people depicted therein, including Ungaro's late father, who passed away in 2019.

## II. ANALYSIS

### A. Mandamus claim

{¶ 7} To prevail on his mandamus claim, Ungaro must prove by clear and convincing evidence a clear legal right to have his name placed on the ballot, a corresponding clear legal duty on the part of the board to place his name on the ballot, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Law v. Trumbull Cty. Bd. of Elections*, 157 Ohio St.3d 280, 2019-Ohio-3724, 135 N.E.3d 762, ¶ 12. The board concedes that Ungaro lacks an adequate remedy in the ordinary course of the law given the proximity of the November general election. Therefore, for his claim to succeed, Ungaro must show that the board "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11.

{¶ 8} Ungaro argues that the board abused its discretion in rejecting his petition. "A board abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable fashion." *Law* at ¶ 13.

{¶ 9} R.C. 3501.01(I) defines an "independent candidate" as "any candidate who claims not to be affiliated with a political party, and whose name has been certified" on the ballot "through the filing of a statement of candidacy and nominating petition, as prescribed in section 3513.257 of the Revised Code." R.C. 3501.01(I) and 3513.257 require an independent candidate to make a claim of disaffiliation from a political party in good faith. *See State ex rel. Davis v. Summit Cty. Bd. of Elections*,

137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 17 (following *Morrison v. Colley*, 467 F.3d 503, 509 (6th Cir.2006)).

{¶ 10} Although Ungaro has the burden to prove that the board abused its discretion, he is not required to show that he claimed disaffiliation from the Democratic Party in good faith. Instead, those opposing his candidacy have the burden to establish that Ungaro claimed disaffiliation in bad faith, "for example, by showing a continuing connection to a political party," *Law*, 157 Ohio St.3d 280, 2019-Ohio-3724, 135 N.E.3d 762, at ¶ 18. *See also Davis* at ¶ 27, 30; *State ex rel. Richards v. Stark Cty. Bd. of Elections*, 145 Ohio St.3d 211, 2015-Ohio-3658, 48 N.E.3d 507, ¶ 12; *State ex rel. Morris v. Stark Cty. Bd. of Elections*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, ¶ 19.

{¶ 11} The board has this burden for two reasons. First, the board did not hold a hearing, and "a board cannot elect to forgo an evidentiary hearing and then fault the candidate for not presenting evidence on h[is] own behalf," *Davis* at ¶ 30. And second, election laws must be liberally construed "in favor of persons seeking to hold public office to avoid restricting the right of electors to choose from all qualified candidates." *State ex rel. Lynch v. Cuyahoga Cty. Bd. of Elections*, 80 Ohio St.3d 341, 343, 686 N.E.2d 498 (1997). "Consistent with the liberal construction of the laws in favor of candidates, a finding that the candidate's claim was not made in good faith must be supported by clear and convincing evidence." *State ex rel. Livingston v. Miami Cty. Bd. of Elections*, 196 Ohio App.3d 263, 2011-Ohio-6126, 963 N.E.2d 187, ¶ 34 (2d Dist.).

{¶ 12} The board argues that it did not rely on the protest; the board asserts that it invalidated the petition on "its own volition" based on Ungaro's campaign website. The record, however, does not show that the contents of Ungaro's website were before the board when it invalidated Ungaro's petition on August 22. Betras stated that *he* had looked at the website that day, but the other board members did not indicate that they had done so. The record strongly suggests that the two board

members who joined Betras in voting to invalidate Ungaro's petition did so based only on Betras's representation that he had looked at the website and had "seen enough." We conclude that the board abused its discretion by invalidating Ungaro's nominating petition in this arbitrary fashion, without permitting the parties to be heard or to present any evidence; the information on which the board's decision was based was not evidence properly before it.

{¶ 13} The board has attempted to introduce into evidence the contents of Ungaro's campaign website by filing an affidavit in this case in which Betras identifies the photos he claims to have viewed on his cellphone at the August 22 board meeting. But "evidence that was not presented to a board of elections is not relevant to whether the board abused its discretion or clearly disregarded applicable law." *State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 11; *see also State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 40. We do not consider the photos attached to Betras's affidavit, because the record does not show that they were presented to the full board at the August 22 meeting.

{¶ 14} Because we agree with Ungaro's argument that the board abused its discretion, we need not address the remaining arguments Ungaro raises in his merit brief.

### B. Request for attorney fees

{¶ 15} In his complaint, Ungaro alleges that he is entitled to an award of attorney fees. "In Ohio, the general rule is that absent a statute allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed acted in bad faith." *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 55.

{¶ 16} Although not in the context of an argument for attorney fees, Ungaro argues that Betras "had an ulterior, bad faith motive in refusing to certify [the]

nominating petition." Ungaro supports this claim by referring to a voicemail Betras left for him after the 2018 general election, in which Ungaro ran for state representative as the Democratic-endorsed candidate. Even if the voicemail shows some ill will on the part of Betras, Ungaro provides no evidence showing that the board as a whole acted in bad faith. We therefore deny Ungaro's request for attorney fees.

### C. Motion to strike

{¶ 17} Ungaro's evidentiary submission includes newspaper articles and a recording and transcription of the voicemail Betras left for Ungaro after the 2018 general election. The board has filed a motion to strike these pieces of evidence, arguing that they constitute hearsay and that the voicemail lacks a proper foundation. We deny the motion without answering these admissibility questions.

{¶ 18} In asking the court to rule on the admissibility of certain evidence, the board cites *State ex rel. Citizens for Responsible Green Govt. v. Green*, 155 Ohio St.3d 28, 2018-Ohio-3489, 118 N.E.3d 236, ¶ 18, fn. 2 (lead opinion), in which the court stated that it would not consider a newspaper article because it was hearsay. But *Green* does not support the conclusion that we must rule on the admissibility of certain evidence in the context of a motion to strike in an expedited election case or that we must strike inadmissible evidence. In *Green*, the court simply noted that certain evidence submitted by one of the parties was inadmissible hearsay. Particularly in expedited election cases, we are capable of making evidentiary determinations without striking evidence. *See Tam O'Shanter*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, at ¶ 11. This court denies the board's motion.

## III. CONCLUSION

**{¶ 19}** We grant the writ of mandamus and deny Ungaro's request for attorney fees. The board's motion to strike is denied.

Writ granted.

O'CONNOR, C.J., and DONNELLY and STEWART, JJ., concur.

BRUNNER, J., concurs in part and dissents in part, with an opinion.

KENNEDY, FISCHER, and DEWINE, JJ., dissent, with an opinion.

––––––––––––––––

**BRUNNER, J., concurring in part and dissenting in part.**

**{¶ 20}** I join the majority opinion except as to its denying the motion to strike of respondent, Mahoning County Board of Elections ("the board of elections" or "the board"). I would in addition point out that R.C. 3501.39(A)(1) requires a board of elections to accept a nominating petition unless a "written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition is invalid, in accordance with any section of the Revised Code providing a protest procedure." Here, the board of elections chair, David Betras, first suggested that the board accept the petition subject to the protest and then hold a protest hearing at a later date. The chair noted the importance of taking evidence and creating a record. But then he stated that he had personally "seen enough," that he planned to vote to reject the petition immediately, and that he "just wanted to let everyone know that ahead of time." The board neither stated that the protest was untimely nor that it was rejecting the protest and proceeding on its own initiative pursuant to R.C. 3501.11(J) (permitting the investigation of election irregularities) or (K)(1) (requiring a board of elections to determine the sufficiency and validity of petitions and nomination papers) to disqualify the petition. R.C. 3501.39 requires a hearing to be held on a protest against a petition or candidacy, but the board did not hold a hearing in this case.

**{¶ 21}** As noted at the outset, I respectfully dissent from the majority opinion in that I would grant the motion of the board of elections to strike evidence submitted by relator, Eric Ungaro—namely, several recent newspaper articles and a recording and transcription of a voicemail that board chair Betras left for Ungaro after the 2018 general election. I would hold that this evidence is inadmissible under the Ohio Rules of Evidence as hearsay and irrelevant, respectively. See generally Evid.R. 801 et seq. (hearsay definitions and rule) and 401 (irrelevant evidence). I would consider the admissibility of the evidence at issue and then grant the motion to strike because I believe it is important to make clear to the parties and the public the evidence as well as the law relied on in reaching our decision.

**{¶ 22}** For the reasons stated above, I respectfully concur in part and dissent in part and concur in the court's judgment.

––––––––––––––––––––

**KENNEDY, FISCHER, and DEWINE, JJ., dissenting.**

**{¶ 23}** Relator, Eric Ungaro, filed his statement of candidacy and nominating petitions with respondent, Mahoning County Board of Elections, on July 25, 2022. R.C. 3513.257 requires "[e]ach person desiring to become an independent candidate for an office for which candidates may be nominated at a primary election" to file a statement of candidacy and nominating petition "no later than four p.m. of the day before the day of the primary election immediately preceding the general election at which such candidacy is to be voted for by the voters." For the reasons stated in our individual opinions dissenting in part in *State ex rel. DeMora v. LaRose*, ___ Ohio St.3d ____, 2022-Ohio-2173, ___ N.E.3d ____, the primary date from which filing deadlines should have been calculated for 2022 General Assembly races remained May 3, 2022. Since Ungaro did not file his statement of candidacy and nominating petitions by May 2, 2022, he is ineligible to run as an independent in the November 8, 2022 election.

{¶ 24} Therefore, we would deny the writ of mandamus, deny Ungaro's request for attorney fees, and deny as moot the board's motion to strike.

————————

Winter Trimacco Co., L.P.A., and Courtney J. Trimacco, for relator.

Matthew G. Vansuch; and Brouse McDowell, L.P.A., Hanne-Lore Gambrell, and Irving B. Sugerman, for respondent.

————————————